IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIGH ASSOCIATES, LIMITED, MCS-LANCASTER DE HOLDING, L.P., HIGH FAMILY PARTNERSHIP I, L.P., HIGH FAMILY GENERAL CORPORATION, HIGH-MCS, G.P., LLC, and HIGH REAL ESTATE GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION<br>NO. 12-5804 |

**MEMORANDUM OPINION**

**SCHMEHL, J.**                                                                                 **OCTOBER 16, 2013**

**I.      INTRODUCTION**

Plaintiffs, High Associates, Limited, MCS-Lancaster DE Holding, L.P., High Family Partnership I, L.P., High Family General Corporation, High-MCS, G.P., LLC, and High Real Estate Group, LLC, ("Plaintiffs"), brought the instant action, contending that Defendant, Zurich American Insurance Company ("Defendant" or "Zurich"), breached its insurance contract in denying Plaintiffs' claims. Defendant contends that the costs the Plaintiffs are seeking to be reimbursed for are expressly excluded from coverage under its insurance policy, and therefore it is entitled to an entry of judgment as to Plaintiffs' breach of contract claims. Before the Court are the parties' cross-motions for summary judgment. For the following reasons, summary judgment is granted in favor of Plaintiffs on their claim for reimbursement for redesign costs, and summary judgment is denied to Plaintiffs on their claim for the costs associated with the filling of sinkholes.

Further, summary judgment is granted in favor of Defendant on its claim that the policy in question does not require it to reimburse Plaintiffs for the costs associated with the filling of sinkholes, and summary judgment is denied to Defendant on its claim that redesign costs are excluded under the policy.

## II. LEGAL STANDARD

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. See also Sommer v. The Vanguard Group, 461 F.3d 397, 403-04 (3d Cir. 2006).

The interpretation of an insurance contract is a question of law. Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011) (citations omitted). The issue of whether a claim is within a policy's coverage or barred by an exclusion may be decided on a motion for summary judgment. Bishops, Inc. v. Penn Nat'l Ins., 984 A.2d 982, 989 (Pa. Super. 2009)(quoting Nationwide Mut. Ins. Co. v. Nixon, 453 Pa.Super. 70, 682 A.2d 1310, 1313 (Pa. Super. 1996).

A court must give effect to the plain language of the insurance contract read in its entirety. Am. Auto Ins. Co., 658 F.3d at 320 (citation omitted). When the policy

2

language is ambiguous, the provision must be construed in favor of the insured. Id. (quoting Med Protective Co. v. Watkins, 198 F.3d 100, 104 (3d Cir. 1999); 401 Fourth St., Inc., v. Investors Ins. Grp., 583 Pa. 445, 789 A.2d 166, 174 (Pa. 2005) (citing Mohn v. Am. Cas. Co. of Reading, 458 Pa. 576, 326 A.2d 346, 352 (Pa. 1974)). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. 401 Fourth St., Inc., 879 A.2d at 171 (quoting Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (1999)

### III.  FACTUAL BACKGROUND

The material facts of this case are not in dispute. Plaintiffs are the owners and developers of a large shopping center located in East Lampeter Township, Lancaster County, Pennsylvania known as Mill Creek Square. (Stip. of Facts and Exhibits, ¶¶ 1, 3.) A Storm Water Management Agreement and Declaration of Easement between East Lampeter Township and Plaintiff MCS-Lancaster DE Holding, L.P., requires Plaintiff MCS-Lancaster DE Holding, L.P. to comply with the East Lampeter Township Storm Water Management Ordinance. (Stip. of Facts and Exhibits, ¶ 5.) The Mill Creek Square property included three stormwater detention basins, known as Basins A, B, and C, that managed stormwater flowing from buildings, parking lots, and other impervious surfaces. (Stip. of Facts and Exhibits, ¶ 6.) These stormwater basins were designed to retain stormwater runoff from the impervious areas of the development and were unlined so the stormwater could infiltrate the groundwater in the areas under the basins. (Stip. of Facts and Exhibits, ¶ 7.) Therefore, these basins served to increase the volume of water flowing through the ground underneath them from that which passed through the ground prior to the development of Mill Creek Square. (Stip. of Facts and Exhibits, ¶ 8.)

On September 30, 2012, the Mill Creek Square area received substantial rainfall over a twenty-four hour period, including periods of 1.2 inches of rain per hour. (Stip. of Facts and Exhibits, ¶ 9.) The increased flow of stormwater into the ground below the basins caused substantial sinkholes to form in the areas of Basins A and B. (Stip. of Facts and Exhibits, ¶ 10.) After the storm, Plantiffs stabilized and repaired the basins and filled in the sinkholes. (Stip. of Facts and Exhibits, ¶ 11.) Plans for the repair and stabilization of the sinkholes around Basins A and B were developed with the involvement of RGS Associates, ARM Group, Inc., Plaintiffs, the Pennsylvania Department of Environmental Protection, Lancaster County Conservation District, East Lampeter Township and others, and included consideration of applicable erosion and sediment control and stormwater management requirements, as well as other factors. (Stip. of Facts and Exhibits, ¶ 12.) State, county and municipal authorities would not allow Plaintiffs to repair the basins using the same design that they were originally constructed with; rather, Plaintiffs were required to redesign the basins to include clay liners to retain stormwater runoff at the site and to prevent the infiltration of stormwater into the underlying karst formation[1]. (Stip. of Facts and Exhibits, ¶¶ 13, 14.)

Plaintiffs timely reported the loss to Zurich, their insurance carrier at the time of the loss, who had issued a Commercial Inland Marine policy to certain of the Plaintiffs. (Stip. of Facts and Exhibits, ¶ 15.) This policy provided builder's risk coverage for the development of Mill Creek Square, effective January 1, 2010 to January 1, 2011. (Stip. of Facts and Exhibits, ¶ 20.) Zurich reimbursed Plaintiffs for the estimated cost of rebuilding the basins as originally designed and installed, and the costs associated with

---

[1] Karst is defined as an irregular limestone region with sinkholes, underground streams and caverns. Merriam-Webster Dictionary, www.m-w.com (last visited Oct. 15, 2013).

emergency stabilization of the sinkholes. (Stip. of Facts and Exhibits, ¶ 18.) Zurich has declined to reimburse Plaintiffs for the costs associated with the redesign and construction of the stormwater basins to conform with state and local regulations, and the costs associated with the filling in of the sinkholes, on the grounds that these costs are expressly excluded from coverage under its policy. (Stip. of Facts and Exhibits, ¶ 19.)

### IV.  THE POLICY AT ISSUE

Zurich issued Commercial Inland Marine policy number IM 4613093-00 to certain of Plaintiffs, providing builder's risk coverage for the project at Mill Creek Square from January 1, 2010 to January 1, 2011. (Stip. of Facts and Exhibits, Ex. 1.) This policy provides "all risk" coverage to covered property unless damage to the property is excluded pursuant to the policy.

The Zurich policy states, *inter alia*:

**PERILS COVERED**

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

**PERILS EXCLUDED**

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   **b. Earth movement or volcanic eruption**

   --"We" do not pay for loss caused by any "earth movement" (other than sinkhole collapse) or caused by eruption, explosion or effusion of a volcano.

The policy in question also contained an endorsement, which states, in pertinent part:

**MANUSCRIPT –ORDINANCE OR LAW COVERAGE ENDORSEMENT**

**SUPPLEMENTAL COVERAGES**

. . .

2. **Increased Costs to Repair and Cost to Demolish/Clear Site**

   A. **Increased Costs to Repair –** When a covered peril occurs to a covered building or structure, "we" cover the:

      **1)** increased cost to repair, rebuild or reconstruct damaged portions of a covered building or structure; and

      **2)** increased cost to repair, rebuild or reconstruct undamaged portions of a covered building or structure whether or not those undamaged portions need to be demolished

      as a result of the enforcement of building, zoning or land use ordinance, law or decree and is in force at the time when a covered peril occurs to a covered building or structure.

      . . .

3. **"We" Do Not Cover** – "We" do not cover the cost associated with the enforcement of any ordinance, law or decree that:

   . . .

   c.   requires "you" or anyone else to install process improvements or process modifications to property, when either is required or performed to comply with either OSHA regulations or other similar workplace safety regulations or EPA or other similar environmental regulations.

The policy also contained the following relevant definitions:

4. "Earth movement" means any movement or vibration of the earth's surface (other than "sinkhole collapse") including but not limited to earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising or shifting of the earth.

   . . .

9. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of land or the cost of filling the sinkholes.

Zurich has declined to provide coverage for portions of Plaintiffs' claim based on the endorsement which states that it does not cover the costs associated with improvements or modifications required to be performed by EPA or other similar environmental regulations. (Stip. of Facts and Exhibits, ¶ 21.) Zurich has also declined to provide reimbursement to Plaintiffs for the cost of filling in the sinkholes on the grounds that the policy does not provide coverage for these types of costs. (Stip. of Facts and Exhibits, ¶ 22.)

## V. BREACH OF CONTRACT

To succeed on a breach of contract claim, plaintiff must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Caroselli, Sr. v. Allstate Property and Cas. Ins. Co., 2010 WL 3239356, at *4 (E.D. Pa. Aug. 16, 2010) (Schiller, J.) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Under Pennsylvania law, "the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008)). In the instant matter, the issue is whether Zurich had a duty to reimburse Plaintiffs for the costs incurred in redesigning stormwater basins and filling in sinkholes.

## A. REDESIGN OF STORMWATER MANAGEMENT BASINS

A court must look first to the language of the policy to determine the intent of the parties. Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Donegal Mut. Ins. Co. v. Baumhammers, 595 Pa. 147, 938 A.2d 286, 290 (Pa. 2007)). When the language of the policy is clear and unambiguous, the court must give effect to that language. Id., (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 908 A.2d 888, 897 (2006)). However, when a provision in the policy is ambiguous, the Court is to construe the policy in favor of the insured. Id. "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.' " Madison Construction Co. v. Harleysville Mutual Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (Pa. 1999) (quoting Hutchinson v. Sunbeam Coal Co., 513 Pa. 192, 519 A.2d 385, 390 (Pa. 1986). However, courts "should read policy provisions to avoid ambiguities if possible and should not torture the language to create them." Spezialetti v. Pac. Employers Ins. Co., 759 F.2d 1139, 1142 (3d Cir. 1985). A term is ambiguous if more than one reasonable interpretation of the term exists. Devcon Int'l Corp. v. Reliance Ins. Co., 609 F.3d 214, 218 (3d Cir. 2010).

Keeping these principles in mind, we now will address the arguments raised by the parties in their respective motions. We conclude that the policy provisions which require payment to be made for improvements due to land use regulations but not due to environmental ordinances are ambiguous. Therefore, these provisions should be construed in favor of Plaintiffs and against Zurich.

Plaintiffs claim that Zurich should provide coverage for the redesign and reconstruction of the stormwater basins pursuant to the policy's Supplemental Coverage. This Supplemental Coverage states that Zurich will cover the increased cost to repair a covered building or structure "as a result of the enforcement of a . . . land use ordinance, law or decree" which is "in force at the time when a covered peril occurs to a covered building or structure." (Stip. of Facts and Exhibits, Ex. 1.) Zurich denied coverage for this claim based upon the policy exclusion which states that there is no coverage for "the costs associated with the enforcement of any ordinance, law or decree that . . .requires 'you' or anyone else to install process improvements or process modifications to property, when either is required or performed to comply with . . .EPA, or other similar environmental regulations." (Id.)

In denying Plaintiffs' claim regarding the increased costs to redesign and repair the stormwater basins, Defendant stated:

> We note that your claim included costs for the change of the design of the basin due to requirements of the Pennsylvania Department of Environment Protection (PADEP) as well as other environmental orders. These additional costs are excluded and we refer you to the manuscript endorsement to your Policy #IM1663 Ed.1.0:
>
> > 3. We do not cover – "we" do not cover the costs associated with the enforcement or decree that:
> >
> > . . .
> >
> > c. requires "you" or anyone else to install process improvements or process modifications to property, when either is required or performed to comply with either OSHA regulations or other similar workplace safety requirements, or EPA, or other similar environmental regulations.
>
> The additional cost to change the design in accordance with the changes in the requirements of the PADEP or any other environmental regulation such as the

> storm water management ordinance of East Lampeter Township are not covered. The policy provides coverage to restore the basins back the way they were prior to the sinkhole collapse. The payments cover those confirmed costs.

(Stip. of Facts and Exhibits, Ex. 3, Oct. 28, 2011 correspondence.) Further, on February 8, 2012, Defendant again denied coverage for the redesigned basins as follows:

> The new design of the basins after the sinkholes appeared was authorized and approved by the PADEP. We have confirmed this with RGS Associates, the Lancaster Conservation District and the Pennsylvania Department of Environmental Protection. Additionally, the report dated November 17, 2010, by ARM Group, Inc. also states that PADEP directed the repairs. The new design may also have been approved by the East Lampeter Township but they have not confirmed that. The East Lampeter Township Storm Water Management Ordinance refers to and incorporates sections of the PADEP Rules and Regulations and the Pennsylvania Code on Erosion and Sediment Control. It should be noted that while this ordinance may be considered a "land use" ordinance it is also environmental. Our position, therefore, as respects the costs of the design change has not changed and those costs are not covered as stated in our letter of October 28, 2011.

(Stip. of Facts and Exhibits, Ex. 3, Feb. 8, 2012 correspondence.)

Therefore, the resolution of this issue turns on whether the East Lampeter Township Storm Water Management Ordinance is a "land use ordinance" or an "environmental regulation," as those terms are used in the Zurich policy. In short, Plaintiffs' position is that the Township Storm Water Management Ordinance ("Township SWMO") is a "land use ordinance," and therefore, the policy should cover the increased cost to redesign the stormwater basins due to enforcement of this ordinance. Defendant's position is that the Township SWMO is an "environmental regulation," and therefore, the redesign costs are excluded from coverage. The ultimate question then is whether the Township is a land use ordinance, an environmental regulation, or both.

The Township SWMO states that its provisions, regulations, limitations and restrictions apply to:

> A. Development of any use within a floodprone area as delineated by the Township Zoning Ordinance;
>
> B. Development of any commercial use, industrial use, institutional use, residential use . . . mobile home park, school, church lodge, club or any other use determined by the Township to be of similar character.
>
> . . .
>
> F. Installation of storm water runoff systems or appurtenances thereto;
>
> G. Removal of ground cover, grading filling or excavation in excess of 10,000 square feet except for the agricultural use of land…

(Stip. of Facts and Exhibits, Ex. 2 at p. 5.) The Township SWMO was enacted by East Lampeter Township pursuant to the Pennsylvania Storm Water Management Act, 32 P.S.§ 680.1 *et seq.* The purpose of the Pennsylvania Storm Water Management Act ("PA SWMA") is to:

> (1) Encourage planning and management of storm water runoff in each watershed which is consistent with sound water and **land use** practices.
>
> (2) Authorize a comprehensive program of storm water management designated to preserve and restore the flood carrying capacity of Commonwealth streams; to preserve to the maximum extent practicable natural storm water runoff regimes and natural course, current and cross-section of water of the Commonwealth; and to protect and conserve ground waters and ground-water recharge areas.
>
> (3) Encourage local administration and management of storm water consistent with the Commonwealth's duty as trustee of natural resources and the people's constitutional right to the preservation of natural, economic, scenic, aesthetic, recreational and historic values of the **environment**.

32 P. S. § 680.3 (emphasis added).

A review of the Township SWMO shows that it is a land use regulation, as it serves to limit and control how property owners can use their property within the township. A review of the PA SWMA, which authorizes the Township SWMO, shows that it is an environmental ordinance, as it contemplates the protection and preservation of the environment and the natural resources of Pennsylvania. The PA SWMA also states that its purpose is to encourage planning consistent with sound "land use practices." 32 P.S. § 680.3(1). The Township SWMO is a land use ordinance authorized by an environmental regulation which also contemplates sound land use practices. This leads to the conclusion that the Township SWMO is both a land use ordinance and an environmental regulation. Further, Zurich admitted in its correspondence to Plaintiffs that the Township SWMO could in fact be both a land use ordinance and an environmental regulation. (Stip. of Facts and Exhibits, Ex. 3, Feb. 8, 2012 correspondence.) If so, then the policy must be considered ambiguous and construed against the drafter.

The Zurich policy fails to define the terms "land use regulation" or "environmental ordinance," and it also fails to describe the differences between a land use regulation and an environmental ordinance. The policy fails to specifically preclude coverage where increased costs of design and construction are due to **both** land use and environmental regulations, and it fails to set forth any sort of language that evidences Zurich's intent not to pay for increased costs due to environmental ordinances in the event other types of ordinances contributed to those increased costs. For all of these reasons, a policyholder could reasonably expect coverage for the increased costs to redesign the stormwater basins due to the Township SWMO.

Therefore, we find that the policy is ambiguous and should be interpreted in favor of Plaintiffs, the non-drafting parties. Accordingly, we grant Plaintiffs' Motion for Summary Judgment and deny Defendant's Motion for Partial Summary Judgment as to Count I of the Complaint in part, finding that the policy was ambiguous regarding the land use ordinance/environmental regulation provisions and should be interpreted as providing coverage to the insured on this issue.[2]

### B. FILLING SINKHOLES

Both Plaintiffs and Defendant also seek summary judgment on the portion of the breach of contract claim that deals with the costs paid by Plaintiffs to fill in the sinkholes that developed at Mill Creek Square. Plaintiffs claim that under the policy, they are entitled to the costs they expended to fill in the sinkholes. Defendant denies this claim, stating that "the cost of filling the sinkholes is specifically excluded and would not otherwise be payable under the policy terms." (Stip. of Facts and Exhibits., Ex. B.) We conclude that the policy in question clearly excepts the cost of filling sinkholes from Defendant's coverage. Therefore, we find in favor of Defendant and against Plaintiff on this portion of the breach of contract claim.

As discussed above, the policy in question contains the following exclusion:

**PERILS EXCLUDED**

> "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate

---

[2] Plaintiffs further argue that the exclusion in question is ambiguous because of its use of the undefined terms "process improvements" and "process modifications." As we have found the exclusion to be ambiguous on other grounds, this argument will not be addressed in this opinion.

13

the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

**b. Earth movement or volcanic eruption**

--"We" do not pay for loss caused by any "earth movement" (other than sinkhole collapse) or caused by eruption, explosion or effusion of a volcano.

"We" do pay for direct loss by fire, explosion or "volcanic action" resulting from either "earth movement" or eruption, explosion or effusion of a volcano.

Under the policy's definition section, it states:

"Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. **It does not include the value of land or the cost of filling the sinkholes.**

(Stip. of Facts and Exhibits, Ex. 1.) (emphasis added)

Plaintiffs argue that Zurich is unjustified in denying coverage under the earth movement exclusion because the Pennsylvania Supreme Court has determined that the earth movement exclusion is ambiguous and is applicable only to naturally occurring earth movement, not to manmade damage such as the sinkholes in question. (Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment at p. 12.) Plaintiffs claim that "by relying on an inapplicable exclusion that has been declared ambiguous by the Supreme Court of Pennsylvania, the Defendant breached its contract with Plaintiffs." (Id. at p. 13.)

Defendant claims that the costs to fill the sinkholes are barred from coverage under the earth movement exclusion, as the exclusion excepts sinkhole collapse and does not extend to the cost of filling in the sinkholes. (Defendant's Memorandum of Law in Support of its Motion for Partial Summary Judgment at pp. 8-9.) Defendant also

14

extensively argues that the earth movement exclusion is not ambiguous. (Id., at pp. 9-12.)

We find that the policy does not extend coverage to the costs of filling sinkholes and therefore, we do not reach the issue of whether the earth movement exclusion is ambiguous. "An insurance policy must be ... construed according to the plain meaning of its terms," C.H. Hesit Caribe Corp. v. American Home Assurance Co., 640 F.2d 479, 481 (3d Cir.1981), and "[the court] must construe a contract of insurance as a whole and not in discrete units." Koval v. Liberty Mut. Ins. Co., 366 Pa.Super. 415, 531 A.2d 487, 489 (Pa.Super.1987.) Strange or contrived readings of policy language are not to be undertaken to create an ambiguity where none exists, nor should a court attempt to rewrite policy language in a manner that conflicts with the plain meaning of the words employed. Lucker Mfg. Inc. v. The Home Ins. Co. , 23 F.3d 808, 814 (3d Cir. 1994).

The earth movement exclusion states that Zurich will not pay for "loss caused by any 'earth movement' (**other than 'sinkhole collapse'**) or caused by eruption, explosion, or effusion of a volcano." (Stip. of Facts and Exhibits, Ex. 1.) (emphasis added) The definition of "sinkhole collapse" contained in the policy unequivocally states that it "does not include the . . . cost of filling the sinkholes." (Id.) A thorough review of this policy language shows that Plaintiffs' reading of the exclusion is incorrect. The policy specifically excepts sinkhole collapse from the exclusion, then further excepts the cost of filling the sinkholes from the definition of sinkhole collapse to order to further narrow Zurich's potential liability in the event of a sinkhole on insured property. Under the policy, Defendant would be required to pay for damages to covered property caused by a sinkhole, but would not be required to pay for the costs associated with filling in the

15

sinkhole. We find this language to be clear and unambiguous, and Plaintiffs are not entitled to reimbursement for the costs of filling in the sinkholes.

In addition, the case Plaintiffs rely on in support of their argument that the earth movement clause is ambiguous, <u>Steele v. Statesman Ins. Co.</u>, 607 A.2d 742 (Pa. 1992), is distinguishable from the instant matter. In <u>Steele</u>, the Pennsylvania Supreme Court found that the earth movement exclusion at issue would only apply to naturally occurring events as a matter of law. Therefore, the plaintiffs in <u>Steele</u> were entitled to coverage for their loss which was caused by manmade earth movement. Plaintiffs in this case argue that the Zurich exclusion is ambiguous as in <u>Steele</u>, and that the sinkholes in question were manmade, and therefore they are entitled to coverage. However, finding the earth movement exclusion to be ambiguous in this case still would not entitle Plaintiffs to reimbursement for the cost of filling in the sinkholes. Whether the earth movement was natural or manmade, it was still a "sinkhole collapse," and the Zurich policy specifically defines "sinkhole collapse" as **not** including the costs to fill in sinkholes. Even if this court found the earth movement exclusion to be ambiguous, it does not provide coverage to Plaintiffs for filling in sinkholes, because the definition of sinkhole collapse specifically excludes recovery for the type of damages Plaintiffs are seeking.

Plaintiffs' proposed reading of the exclusion certainly strains the language of the policy in order to create an ambiguity. Therefore, we shall reject their interpretation as unreasonable and give the contract language its plain meaning. Plaintiff cannot escape the fact that although the policy specifically provides coverage for sinkhole collapse as sought, it expressly does not provide coverage for the cost of filling sinkholes. We choose to read the policy as it is written and to not "torture the language" to create an

ambiguity. Spezialetti v. Pac. Employers Ins. Co., 759 F.2d at 1142. Accordingly, we find that Defendant did not breach its insurance contract with Plaintiffs by refusing to pay Plaintiffs for the costs associated with filling the sinkholes. Therefore, we grant summary judgment in favor of Defendant and deny summary judgment to Plaintiffs on this issue.[3]

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is granted as to the Count I of the Complaint regarding the redesign and repair of the stormwater basins, and Defendant's Motion for Partial Summary Judgment as to the redesign and repair issue is denied. Further, Defendant's Motion for Partial Summary Judgment as to the costs to fill the sinkholes set forth in Count I of Plaintiffs' Complaint is granted, and Plaintiffs' Motion for Summary Judgment as to the filling of the sinkholes is denied.[4]

An appropriate order follows.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
Jeffrey L. Schmehl, J.

---

[3] Defendant also argues that coverage for the cost of filling in sinkholes is unavailable because the policy does not provide coverage for damage to "land." As we have determined that the cost of filling sinkholes is not covered by the Zurich policy on different grounds, we do not address whether the policy provides coverage for damage to land.

[4] We note that Plaintiffs' Complaint also contains counts for common law and statutory bad faith, unjust enrichment and violation of the Unfair Trade Practices Consumer Protection Law. Our decision today does not affect those claims, which remain in Plaintiffs' Complaint.